**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAYSON POLAND,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 1:16-cv-2031 (TSC) |
| | ) |
| **DISTRICT OF COLUMBIA WATER** | ) |
| **AND SEWER AUTHORITY,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jayson Poland has sued his employer, the District of Columbia Water and Sewer

Authority ("DC Water"), for race discrimination, retaliation, and hostile work environment, in

violation of Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights

Act ("DCHRA"), and for deprivation of his equal protection rights under the Fifth Amendment

of the United States Constitution.  ECF No. 20, Amended Complaint ("Am. Compl.") at 1.  DC

Water has moved to dismiss Poland's lawsuit, arguing that he has failed to state a valid claim for

relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 22, Def. Mot. at 1.  For

reasons explained below, the court will GRANT IN PART and DENY IN PART DC Water's

motion.

### I.     BACKGROUND

Poland is a White male who has been employed by D.C. Water since March 7, 2005.

Am. Compl. ¶¶ 6, 8.  He alleges that from 2006 to 2012, and from 2014 to 2015, he was

"repeatedly . . . subjected to harassment due to his race, which has included, but is not limited to,

racial slurs directed at Poland, pejorative comments about Caucasians in Poland's presence,

threats of violence towards Poland, destruction of Poland's property and physical violence against Poland." *Id.* ¶ 11.

A. **Poland's Interactions with Co-Workers From 2006 to 2012**

Poland claims that the discrimination and harassment began in the summer of 2006. He alleges that he was working with another DC Water employee, Gary Clifton, on a project in Anacostia Park when Clifton said that he would take Poland to the "hood" and let his son "beat [Poland] up." *Id.* ¶¶ 12-13. Poland asserts that Clifton is African American, *id.* ¶ 318, and that his "threat" was "motivated by Poland's race," *id.* ¶ 14. Poland states that he reported this incident to his supervisor, Anthony Richards, who is also African American, *id.* ¶ 64-65, but Richards took no disciplinary action against Clifton, *id.* ¶ 16.

In February 2007, Clifton allegedly complained to DC supervisors that Poland was given preferential treatment and referred to Poland as "the white boy." *Id.* ¶¶ 17-18. Poland claims that later that month, Clifton slashed the tires on his car "because of Poland's race." *Id.* ¶¶ 22, 30. Poland reported the incident to security, *id.* ¶ 25, but DC Water took no action against Clifton, *id.* ¶ 31.

In the spring of 2007, another DC Water employee, Michael Ratiff, who is African American, allegedly said to Poland, "Why won't you hand out my business cards? I'll crack your skull open you cracker motherfucker." *Id.* ¶¶ 32-33. Poland claims that he reported this incident to his supervisor Richards, but Ratiff was not punished. *Id.* ¶¶ 35-36.

A year and a half later, in September 2008, DC Water employee Jonathan Wiley, who is African American, asked Dunbar Regis, DC Water's Inspection and Maintenance Manager, to give him one of Poland's overtime assignments. *Id.* ¶¶ 23, 38. Poland alleges that Regis, in granting Wiley's request, was "motivated by Poland's race." *Id.* ¶¶ 39-40. According to Poland,

this prompted an argument between himself and Wiley, during which "African-American D.C. Water employees restrained Poland." *Id.* ¶¶ 41-43.  He alleges that during the altercation, and while he was restrained, DC Water employees, "motivated by Poland's race," used "profane language," "threatened to physically harm him," and called him a "white cracker." *Id.* ¶¶ 44-46, 48.  He also claims that Richards heard someone call Poland a "white cracker" but took no action. *Id.* ¶ 50.  DC Water subsequently punished Poland for misconduct, a decision that Poland believes was motivated by his race. *Id.* ¶¶ 54-55.

Over two years later, on November 17, 2010, Corey Roberson, a DC Water employee, who was one of Poland's supervisors at the time and who is African American, allegedly "threatened Poland and prevented him from exiting a DC Water building." *Id.* ¶¶ 56-57.  Based on Poland's "information and belief," "Roberson never threatened or attempted to intimidate any of his other supervisors," all of whom were African American, and his actions directed at Poland "were motivated by a racial animus he holds towards Caucasians." *Id.* ¶¶ 58, 62-63.  Poland reported Roberson's actions to the on-site security guard, who is African American, but she allegedly took no action "because of Poland's race." *Id.* ¶¶ 64-69.  Poland believes that his supervisor Richards "was aware of the Roberson incident, but took no action in response." *Id.* ¶ 71.

Almost two years later, in July 2012, DC Water employee Nicole Parker, who is African American, sought a restraining order against Poland, which Poland claims was "because of Poland's race." *Id.* ¶¶ 51, 73.  The judge reportedly denied the request and dismissed the complaint. *Id.* ¶¶ 77-78.  Poland alleges that DC Water knew Parker's actions were motivated by Poland's race but took no action against her. *Id.* ¶¶ 81-82.

The next month, another DC Water employee, Pernell Gethers, who is African American, allegedly yelled at Poland and stated, "this fucking white judge locked up my son, that's why I'm mad at you." *Id.* ¶¶ 83-84. DC Water suspended Gethers for two days for using profanity and for threatening conduct but, upon Poland's "information and belief," the punishment did not account for Gethers' "racial comment" about a "white judge." *Id.* ¶¶ 85-86.

**B.  Poland's Confrontation with Montgomery, Suspension, and Transfer in 2014**

Poland alleges that more than two years later, on November 9, 2014, he received a complaint from a member of the public that a DC Water employee was parked in a Denny's restaurant parking lot. *Id.* ¶¶ 87, 96-103. Poland confronted his co-worker Donald Montgomery, who is African American, about the complaint, and Montgomery admitted that he had been in the parking lot watching DVDs. *Id.* ¶¶ 88, 105, 108. The next day, during an all-crew meeting, Poland related the complaint about Montgomery. *Id.* ¶ 117. As Poland spoke, Montgomery purportedly "became extremely agitated" and told Poland to "shut the fuck up." *Id.* ¶¶ 118, 120. Poland reports that he approached Montgomery, but then left the room "to allow the situation to de-escalate." *Id.* ¶¶ 123, 132.

On November 26, 2014, Poland met with his supervisors Richards and Regis to discuss the November 10, 2014, confrontation. *Id.* ¶¶ 182-83. During the meeting, Regis gave Poland a letter summarizing the findings of DC Water's investigation into the incident and proposing that Poland be suspended for twenty days. *Id.* ¶¶ 135, 148, 182. The letter explained that DC Water had investigated the incident, and Montgomery had reported to DC Water officials that Poland said, "I am going to fuck you up, I am going to smash your head in, I know where you live." *Id.* ¶ 140. Several other employees corroborated Montgomery's story. *Id.* ¶ 142. These employees also said that Poland "aggressively attempted to attack Mr. Montgomery to the point of having to

be restrained by both Rickie Banks and then after initially being stopped continued a second time before being stopped by Jeffrey Coleman." *Id.*  Poland denies this account of events, but admitted that he engaged in "unprofessional conduct," and cursed at and approached Montgomery. *Id.* ¶¶ 123, 146-47.

Poland believes that the proposed twenty-day suspension was too severe and reflects a "double standard." *Id.* ¶ 170.  He claims that a year and a half earlier, in February 2013, Montgomery used "profanity in a threatening and menacing manner," but was not suspended and instead was required to attend counseling. *Id.* ¶ 172.  He also contends that Montgomery should have been punished for "fabricat[ing] the threat allegations." *Id.* ¶ 171.  After being informed of his impending suspension, Poland told Richards and Regis that "he believed he was being discriminated against because of his race." *Id.* ¶ 184.

Around December 8, 2014, Regis informed Poland that he was being transferred from his position as Sewer Foreman to the Customer Service Department. *Id.* ¶ 189.  Regis told Poland the purpose of the transfer was for "cross training." *Id.* ¶ 190.  But, according to Poland, Regis transferred Poland at the instruction of Richards and Dozier as punishment for Poland's questioning whether his suspension was motivated by race. *Id.* ¶¶ 193, 195.  Poland alleges that other Sewer Foremen who were African American were not transferred to the Customer Service Department, and that once there, he lost the opportunity to work overtime shifts, resulting in a decrease in his compensation. *Id.* ¶¶ 197-99, 205-07.

On December 23, 2014, Cuthbert Braveboy, the Director of Sewer Services, who is African American, issued a Notice of Suspension to Poland, officially suspending him for twenty workdays, beginning on December 24, 2014, and ending on January 26, 2015, as punishment for Poland's conduct at the November 10, 2014, meeting. *Id.* ¶¶ 176-77, 237, 365, 371.

C.  **Allegations Against Poland in 2015**

On or about February 27, 2015, DC Water Investigator Eric Gainey met with Poland about a February 10, 2015, email regarding overtime justification reports.  *Id.* ¶¶ 211, 213-14. Gainey questioned whether Poland had inappropriately disseminated that email to other individuals, causing "a workplace disturbance."  *Id.* ¶¶ 219-22.  Poland complains that Gainey's questioning was baseless and that no other employees were questioned.  *Id.* ¶¶ 221-22.

On or about April 27, 2015, Dozier issued a "Notice of Follow-Up Investigation and FINAL WRITTEN WARNING" to Poland.  *Id.* ¶ 224.  The warning referred to Poland's twenty-day suspension and other incidents of unprofessional behavior discovered after the November 10, 2014, confrontation with Montgomery.  *Id.* ¶ 225.  Poland claims this letter represented "Dozier's second effort to terminate Poland's employment as D.C. Water and Sewer Foreman" and "an extension of Dozier's prior discriminatory and retaliatory conduct."  *Id.* ¶¶ 227-28.

Poland returned to the Sewer Services Department when his reassignment ended on May 26, 2015.  *Id.* ¶ 265.  He alleges that after his return, multiple employees accused him of misconduct.  On June 22, 2015, he learned that Montgomery had lodged a complaint that Poland failed to provide him overtime opportunities.  *Id.* ¶ 264.  In early September 2015, Clifton accused Poland of causing another employee to be transferred to a different workstation.  *Id.* ¶¶ 241-42.  Later that month, Poland learned that Montgomery had made a second complaint against him, alleging that Poland failed to call Montgomery for overtime opportunities.  *Id.* ¶¶ 262-63.  Poland admitted that since returning to his Sewer Foreman position, he had not communicated with Montgomery at all, including when assigning overtime.  *See id.* ¶ 265.

In October 2015, Montgomery complained a third time that Poland was not assigning him overtime.  *Id.* ¶ 267.  Poland responded that he did not have direct contact with Montgomery, *see*

*id.* ¶ 270, but also claims Montgomery's allegations were false, racially discriminatory, and retaliatory, *id.* ¶ 276.  Poland alleges that Regis and Braveboy "engaged in racially discriminatory and retaliatory conduct against Poland by failing to address" Clifton and Montgomery's false accusations against him.  *Id.* ¶¶ 276-77.

### D.  **<u>Montgomery's Lawsuit</u>**

In November 2015, Montgomery filed a lawsuit in D.C. Superior Court against DC Water, Poland, Regis, and Braveboy, alleging that Poland assaulted him on November 10, 2014, and that the defendants (including Poland personally) racially discriminated against him.  *See id.* ¶ 278.  Poland, through retained counsel, informed DC Water that it would be a conflict of interest for DC Water's attorneys to represent him.  *Id.* ¶ 279.  Poland claims DC Water retained counsel for his co-defendants, Regis and Braveboy, but did not pay for his attorney's fees and costs, which Poland says was racially motivated.  *Id.* ¶¶ 283-286.

### E.  **<u>Poland's Lawsuit</u>**

Less than a year later, Poland filed this suit.  In his original Complaint, Poland asserted six causes of action: (1) discrimination based on race; (2) hostile-work-environment harassment based on race; (3) retaliation for opposing race discrimination; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) violation of his right to equal protection under the Fifth Amendment of the United States Constitution.  *Id.*  At the parties' request, the court stayed proceedings while Montgomery's lawsuit proceeded in D.C. Superior Court.  *See* ECF No. 11, Consent Mot. to Stay Proceedings; Minute Order (Feb. 24, 2017); Minute Order (June 19, 2017).

The court reinstated this action on October 19, 2018, *see* Minute Order (Oct. 19, 2018), and DC Water moved to dismiss the initial Complaint.  *See* ECF No. 19, Mot. to Dismiss.  In

response, Poland filed an Amended Complaint, dropping his two common law tort claims, and adding a litany of allegations intended to support his remaining four claims: race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the DCHRA, and deprivation of his equal protection rights in violation of the Fifth Amendment of the United States Constitution.  Am. Compl.

DC Water now moves to dismiss the Amended Complaint, arguing that Poland fails to state a valid claim for relief.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases).  A party may move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Compliance with Title VII's statute of limitations is an affirmative defense properly raised in a motion under Rule 12(b)(6).  *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015) (citing cases).  "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

### III.   ANALYSIS

#### A.   <u>Race Discrimination Claim</u>

Courts examine race discrimination claims brought under Title VII and the DCHRA

using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).  *See Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 102 (D.D.C. 2010).

That framework requires a plaintiff to first state a *prima facie* case, showing that: "(1) [the

plaintiff] is a member of a protected class, (2) [he] suffered an adverse employment action; and

(3) the unfavorable action gives rise to an inference of discrimination."  *Stella v. Mineta*, 284

F.3d 135, 145 (D.C. Cir. 2002) (internal citation omitted).  A plaintiff can establish an inference

of discriminatory intent by identifying similarly situated employees, outside his protected

category, who were treated better than he was.  *See Robertson v. Dodaro*, 767 F. Supp. 2d 185,

195 (D.D.C. 2011).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not plead all elements of a

*prima facie* case.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002).  At this stage,

a complaint need only  "provide enough factual heft to show a plausible entitlement to relief,"

*Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010), meaning that it contains "enough facts

to [nudge] a claim to relief . . . across the line from conceivable to plausible," *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 570 (2007).  Pleadings in Title VII cases have sufficient "factual heft"

when they allege that "(i) the plaintiff suffered an adverse employment action and (ii) because of

his race, color, or religion, sex or national origin."  *Bryant v. Pepco*, 730 F. Supp. 2d 25, 30

(D.D.C. 2010) (citing *Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)).

And, when evaluating whether a plaintiff has sufficiently pled facts that support an inference of

discrimination at the motion to dismiss stage, "there is a very low bar for alleging an inference of

discrimination." *Sims v. Sunovion Pharms, Inc.*, Civil Action No. 17- 2519 (CKK), 2019 WL 690343, at *8 (D.D.C. Feb. 19, 2019).

      1.  <u>Administrative Exhaustion</u>

Under Title VII, a plaintiff must exhaust their administrative remedies before filing a lawsuit, which begins with filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See e.g.*, *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 367-68 (D.C. Cir. 2007). Generally, a plaintiff must file a charge within 180 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). If the locality has a work-sharing agreement with the EEOC, as does the District of Columbia, this deadline extends to 300 days. 29 C.F.R. § 1601.13(a)(4)(ii) (2020).

Poland filed his charge of discrimination with the EEOC on July 21, 2015. Am. Compl. ¶ 234. Thus, he timely exhausted his administrative remedies as they relate to alleged conduct that occurred on or after September 24, 2014 (*i.e.*, 300 days before he filed his charge), but not those occurring before that date. *See Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) ("'[D]iscrete discriminatory acts' . . . 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

In his opposition, Poland concedes that he has not timely exhausted his administrative remedies for alleged conduct before September 24, 2014, and that those allegations are thus not actionable. ECF No. 25, Pl. Opp'n at 14. Consequently, he limits his race discrimination claim to three alleged adverse actions that occurred after September 24, 2014: (1) the twenty-day unpaid suspension he received in December 2014; (2) the temporary transfer to the Customer Service Department beginning in December 2008, which allegedly resulted in a 30% decrease in

income; and (3) DC Water's denial of his request to indemnify him for legal fees related to

Montgomery's lawsuit. *Id.*[1]

       2.  <u>Adverse Employment Actions</u>

     DC Water argues that two of Poland's three alleged adverse employment actions cannot

support a claim for racial discrimination. First, it argues that Poland's twenty-day suspension

was not an adverse employment action because Poland does not allege that his suspension was

unpaid. *See* Def. Mot. at 16 ("Nowhere in the Amended Complaint does Poland plead that his

suspension was unpaid, without which he cannot establish this event as an adverse action upon

which he can base a disparate treatment claim."). While it is true that Poland does not explicitly

state that his suspension was unpaid, he alleges facts that support such an inference.

Specifically, he alleges that his co-worker Clifton was also suspended and asked a supervisor to

stagger the suspension so that he would not miss an entire paycheck, Am. Compl. ¶ 251, and that

Poland subsequently asked his own supervisor if he too could stagger his suspension, *id.* 253-54,

318, presumably for the same reason. At the motion to dismiss stage, Poland is entitled to all

reasonable inferences in his favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Accordingly, the court will infer that his twenty-day suspension was unpaid and therefore

constitutes an adverse employment action.

---

[1] While unexhausted allegations of discriminatory acts cannot serve as the basis for a Title VII claim, they can support a separate, charged discriminatory act that forms the basis of a Title VII claim. *Morgan*, 536 U.S. at 113. Accordingly, Poland's allegations of discrimination that occurred before September 24, 2014, cannot sustain a discrimination claim, but can serve as evidence in support of claims for which he exhausted his administrative remedies. *See id.*; *see also Ellison v. Napolitano*, 901 F. Supp. 2d 118, 128 (D.D.C. 2012) (concluding that employee could use prior, unexhausted discrimination claims as background evidence in support of a timely claim).

Second, DC Water argues—for the first time in a footnote in its reply brief—that Poland did not include in his EEOC complaint any allegation regarding DC Water's refusal to pay his attorneys' fees in the Montgomery lawsuit, and therefore this allegation cannot serve as the basis for a Title VII claim.  *See* ECF No. 26, Reply at 3 n.2 (citing *Morgan*, 536 U.S. at 113).  But the D.C. Circuit has held that courts should not address arguments raised for the first time in a reply brief, and the court declines to do so here.  *See, e.g.*, *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013), *aff'd* 699 F.3d 538 (D.C. Cir. 2012) (forfeiting an argument made for the first time in a reply brief); *see also Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (noting caselaw holding that courts should not address arguments raised for the first time in a party's reply).  Consequently, at this stage, the court will not consider whether Poland has exhausted administrative remedies for his claims concerning DC Water's refusal to pay his legal fees and costs.

### 3.   Inference of Discrimination

Next, DC Water argues that Poland has not sufficiently pled facts showing that his twenty-day suspension, his transfer to the Customer Service Department, and DC Water's refusal to pay his legal fees give rise to an inference of discrimination.  Def. Mot. at 18-22; Reply at 4-7. Specifically, it argues that Poland has not pled facts identifying similarly situated employees, outside his protected category, who were treated better than him.  *See* Def. Mot. at 19.  The court disagrees.

Poland's race discrimination claim meets the minimum pleading standard in the Title VII context.  For each of these challenged actions he provides relevant dates and factual context, such as the names of DC water employees who allegedly discriminated against him.  *See, e.g.*, Am. Compl. ¶¶ 96-149, 167-188, 309-311 (allegations regarding twenty-day suspension); *id.* ¶¶

189-210 (temporary transfer); *id.* ¶¶ 278-286 (refusal to cover legal fees).  And for each

allegation, Poland supports an inference of discrimination by naming employees who he argues

were "similarly situated" to him yet who received more favorable treatment.  *See, e.g.*, Am.

Compl. ¶¶ 85, 170-72, 230, 236, 239, 309-10 (alleging "less favorable" treatment than

"similarly-situated African-American DC Water employees" and providing examples of

Roberson, Gethers, Montgomery, Clifton, and Stevenson using profanity and/or threatening

language but receiving less than twenty-day suspension); *id.* ¶¶ 197-208 (alleging that no other

foreman—all the other foremen were African American—were transferred to customer service,

that other foreman and Plaintiff's replacement—whom were African American—continued to

receive overtime opportunities and Poland did not); *id.* ¶¶ 283-86 (alleging that DC Water paid

for legal fees and costs associated with Montgomery's claims against Regis and Braveboy, but

did not pay Poland's expenses for Montgomery's claims against Poland, and that DC Water's

decision to do so was racially motivated).  These allegations are sufficient to support an

inference of discrimination at the motion to dismiss stage.  *See Harrington v. Pompeo*, No. 18-

CV-1056 (TSC), 2020 WL 5816217, at *4 (D.D.C. Sept. 30, 2020) (finding allegation that co-

worker engaged in the same conduct but was treated better than plaintiff, without more, was

sufficient to support an inference of discrimination at the motion to dismiss stage).

     Moreover, the cases upon which DC Water rely involved motions for summary

judgement.  *See* Def. Mot. at 18-22.  It may be that discovery reveals that Poland's alleged

comparators were not in fact "similarly situated."  *See Neuren v. Adduci, Mastriani, Meeks &*

*Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (requiring plaintiff at the motion for summary

judgment stage to "demonstrate that all of the relevant aspects of her employment situation were

'nearly identical' to those of the male associate").  But the court does not reach this question at the motion to dismiss stage.  *See Swierkiewicz*, 534 U.S. at 510-12.

Accordingly, the court will deny DC Water's motion to dismiss Poland's three discrimination claims for which he exhausted his administrative remedies.

**B.  Retaliation Claim**

Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e–3(a)).  To establish a *prima facie* case of retaliation, Poland must show that: (1) he engaged in activity protected by Title VII, (2) his employer took an adverse employment action against him, and (3) the adverse action was causally related to the exercise of those rights.  *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).  However, like his discrimination claim, Poland's retaliation claim "faces a low hurdle at the motion to dismiss stage," *Winston*, 712 F. Supp. 2d at 11, and he does not need to plead each element of his *prima facie* case, *see Swierkiewicz*, 534 U.S. at 515.

DC Water does not dispute that Poland engaged in statutorily protected activity when he told Richards and Regis that he felt his twenty-day suspension was because of his race.  *See* Def. Mot. at 34.  It argues, though, that Poland has not established a causal connection between that protected activity and his transfer to the Customer Service Department.  *See id* at 34-35.

"Because causation is often the most difficult element to show in advance of discovery, courts generally rely on the length of time between the protected activity and the adverse action to determine whether causation has been sufficiently pled at the motion to dismiss stage."

*Bryant*, 730 F. Supp. 2d at 31 (citing *Holcomb v. Powell*, 433 F. 3d 889, 903 (D.C. Cir. 2006)).

"If the adverse action occurs immediately following the protected activity then the court is free

to infer causality; if the adverse action happens many months or years later courts are less likely

to allow such an inference." *Id.* at 32 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268,

273-74 (2001)).  When relying on temporal proximity alone to demonstrate causation, there is no

bright-line rule, although three months is perceived as approaching the outer limit.  *See Hamilton*

*v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

Poland claims that twelve days after he complained to Richards and Regis, they initiated

his transfer to the Customer Service Department, where his compensation decreased by thirty

percent due to a corresponding reduction in overtime opportunities—opportunities which he

alleges were given to African American co-workers.  Am. Compl. ¶¶ 189-208, 356-363.  These

allegations establish a sufficiently close temporal proximity between Poland's alleged protected

activity and the alleged adverse action to show causation.[2]

### C. **Hostile Work Environment Claim**

The Supreme Court has held that Title VII forbids an employer to "requir[e] people to

work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21 (1993).  A hostile work environment can amount to either discrimination or retaliation

---

[2] Poland also claims Dozier retaliated against him by suggesting that Poland be fired for his behavior at the November 10, 2014, meeting, and that DC Water retaliated against him when it suspended him for twenty days.  *See* Am. Compl. ¶¶ 186, 364, 371.  DC Water argues that Dozier's proposal to fire Poland, and DC Water's November 26, 2014, letter regarding his twenty-day suspension both occurred *before* Poland engaged in his protected activity at the November 26, 2014, meeting, and thus do not support his retaliation claim.  *See* Def. Mot. at 34-35.  Poland did not respond to these arguments in his opposition and only addressed DC Water's argument that his temporary transfer was retaliatory.  *See* Pl. Opp'n at 23-26.  Accordingly, the court treats DC Water's argument as conceded.  *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)) (other citation omitted).

under Title VII.  *See, e.g.*, *Harris v. Wackenhut Servs., Inc.*, 419 Fed. Appx. 1 (D.C. Cir. 2011)

(discrimination); *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003)

(retaliation).

 To prevail on a hostile-work-environment claim under either a discrimination or a

retaliation theory, "a plaintiff must show that his employer subjected him to 'discriminatory

intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*,

550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Forklift Systems, Inc.*, 510 U.S. at 21).  "To

determine whether a hostile work environment exists, the court looks to the totality of the

circumstances, including the frequency of the discriminatory conduct, its severity, its

offensiveness, and whether it interferes with an employee's work performance."  *Id.* (citing

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  "The Supreme Court has made it

clear that 'conduct must be extreme to amount to a change in the terms and conditions of

employment.'"  *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524

U.S. at 788).  These standards "ensure that Title VII does not become a general civility code"

that involves courts in policing "the ordinary tribulations of the workplace."  *Faragher*, 524 U.S.

at 788 (citation and internal quotation marks omitted).

 While claims of racial discrimination based on discrete acts must each independently

satisfy the statute of limitations, hostile environment claims "are different in kind from discrete

acts" because "their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115.  The

"unlawful employment practice" therefore "cannot be said to occur on any particular day.  It

occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act

of harassment may not be actionable on its own."  *Id.*  Hostile environment claims are therefore

subject to a different limitations rule: "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability . . . .  In order for the charge to be timely, the employee need only file a charge within . . . 300 days *of any act that is part* of the hostile work environment."  *Id*. at 117-18 (emphasis added).

That principle, however, does not amount to an "open sesame" for all of Poland's allegations.  *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).  Conduct that occurred on either side of the limitations period must constitute the "same actionable hostile environment claim," which is only the case "if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve[ ] the same type of employment actions, occur[ ] relatively frequently, and [are] perpetrated by the same managers.'"  *Id.* (quoting *Morgan*, 536 U.S. at 120-21).  On the other hand, a court cannot "dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."  *Id*. at 1252.

Before assessing whether Poland has adequately stated a hostile work environment claim, the court first must determine whether allegations that occurred before September 24, 2014, are sufficiently related to his timely allegations such that they constitute the "same actionable hostile environment claim."  *See Id.*

Poland's hostile work environment claim is based on his allegation that from 2006 through 2015, several supervisors, including Regis and Richards, subjected him to "severe and pervasive" racial harassment and were aware of several incidents of co-worker harassment, but "chose to take no meaningful action to remedy the harassment."  Am. Compl. ¶¶ 338-39.  For example, he alleges that prior to September 24, 2014, Regis took away one of Poland's overtime

assignments and gave it to an African American co-worker, *id.* ¶¶ 37-39, that Richards knew that Poland's co-workers directed racial slurs at Poland three times between 2006 and 2008, and that Poland's co-workers acted in a "threatening manner" towards him in November 2010, but Richards took no disciplinary action because of Poland's race, *see id.* ¶¶ 15-16, 35-36, 49-50, 61, 71, 95.  Poland alleges that after September 24, 2014, Regis and Richards suspended him for twenty days and transferred him to the Customer Service Department, *id.* ¶¶ 182-95, 205, punishment that Poland says was harsher than that imposed on similarly situated co-workers and which resulted in Poland's overtime assignments going to his African American co-workers.  *Id.* ¶¶ 85, 170-72, 197-208, 230, 236, 239, 309-10, 342(l).  Poland also alleges that DC Water refused to pay for his legal fees incurred in defending against Montgomery's lawsuit, despite paying for his similarly situated co-workers' legal fees, again, because of his race.  *Id.* ¶¶ 283-86. And he claims that Richards "made pejorative racial statements about Caucasians in Poland's presence throughout Poland's tenure at DC Water," *id.* ¶ 295, and that during that same time span he received fewer overtime opportunities than African American co-workers, *id.* ¶¶ 38-40, 199-208.

Poland's allegations adequately connect a series of events into a coherent hostile environment claim in that they involve the same supervisors—Regis and Richards—who allegedly discriminated against him and who turned a blind eye to misconduct based on race, including racial slurs.  Accordingly, because Poland exhausted his administrative remedies with respect to some of the alleged harassment, he may properly rely on other instances of harassment in pleading his hostile work environment claims.

Having determined the scope of allegations that constitute Poland's hostile work environment claim, the court now considers whether those allegations amount to a valid Title VII claim for relief and concludes that they do.

Poland's allegations spanning 2006 to 2015 occurred somewhat sporadically, and are separated by months, and in some instances, years. *Compare id.* ¶¶ 13-15, 73, 342(g), *with id.* ¶¶ 117-32, 342(h) (showing two-year gap between allegations). However, his allegations that he was targeted with racial slurs, physical threats, and adverse employment actions (including his twenty-day suspension and transfer to the Customer Services Department), all because of his race, are numerous and involved the same supervisors. *See, e.g.*, ¶¶ 46, 61, 83-84, 120-21, 148. This conduct could be found to have "unreasonably interfere[d]" with his employment and created "an abusive working environment." *Forklift Syst.*, 510 U.S. at 21, 23. Accordingly, Poland has adequately stated a valid hostile work environment claim.

**D. Section 1983 Claim**

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish (1) "the violation of a right secured by the Constitution and the laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A municipality can be subject to liability under § 1983 "for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality "is not liable under § 1983 unless a municipal 'policy' or 'custom' is the moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989) (quoting *Monell*, 436 U.S. at 694). In other words, "a plaintiff must

demonstrate that a custom or policy of the municipality caused the violation[,]" *Ryan v. Dist. of Columbia*, 306 F. Supp. 3d 334, 341 (D.D.C. 2018) (internal quotation marks and citation omitted), which is ordinarily accomplished by showing either: (1) "the explicit setting of a policy by the government that violates the Constitution"; (2) "the action of a policy maker within the government"; (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom"; or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations[,]" *Blue v. Dist. of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

To be considered a policy maker, an individual must "speak with final policymaking authority," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), and "typically must be at least an agency head or the governing body of an agency," *Coleman v. District of Columbia*, 828 F.Supp.2d 87, 91 (D.D.C. 2011) (finding that an Assistant Chief in the D.C. Fire and Emergency Medical Services Department was not a final policy maker).  The court's analysis turns not on whether an employee was in a leadership position, but on whether "the D.C. Code specifically grant[s] authority to [the alleged policy maker] to promulgate administrative rules or . . . policies and procedures" and whether their "discretionary decisions are constrained by policies not of that official's making."  *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011).

Poland's section 1983 claim is based on his theory that Richards, Regis, and Dozier have final policymaking authority for the District of Columbia, and that their discriminatory actions "constitute a widespread custom and practice" of (1) remaining deliberately indifferent to racial harassment and discrimination towards Caucasian employees, (2) providing African Americans

with more overtime opportunities than Caucasians, and (3) treating African Americans more favorably than Caucasians when imposing discipline.  Am. Compl. ¶¶ 387-390.  He further alleges that his transfer to the Customer Service Department constitutes a policy of demoting Caucasian employees to promote African Americans.  *Id.* ¶ 391.

DC Water argues that Poland fails to state a valid section 1983 claim because he has not alleged facts showing that Richards, Regis, Dozier, or any other DC Water employee acted pursuant to a custom or policy.  Def. Mot. at 39-41.  The court agrees.

Poland offers no facts to support his conclusory assertion that "Richards, Regis, and Dozier all had final policy-making authority" for the District of Columbia.  *See* Am. Compl. ¶ 387.  Nor has he alleged that any policy maker failed to respond to the alleged discrimination in such a manner as to show deliberate indifference to the risk of constitutional violations.  And other than alleging that they discriminated against him, he does not allege any facts to show that Richards, Regis, and Dozier's actions were part and parcel of a custom "so widespread as to have the force of law."  *Bd. of Cnty. Comm'rs of Bryan Cntv. v. Brown*, 520 U.S. 397, 404 (1997).

Poland's section 1983 claim is in essence a request to hold the District of Columbia liable for the actions of Richards, Regis, and Dozier on a respondeat superior theory.  But the Supreme Court has long recognized that a municipality cannot be held liable under section 1983 merely because its employees violated the plaintiff's federally protected rights.  *See Monell*, 436 U.S. at 691-95; *see also Byrd*, 807 F. Supp. 2d at 75 ("Under Section 1983, a municipality is not liable under principles of respondeat superior, but is only responsible for the discretionary acts of a municipal employee who possesses policymaking authority.").  Consequently, the court will dismiss Poland's section 1983 claim.

## IV.  CONCLUSION

For the reasons set forth above, the court will GRANT IN PART and DENY IN PART DC Water's motion to dismiss.

First, the court will DENY DC Water's motion to dismiss Poland's race discrimination claim with respect to the following three allegations: (1) a twenty-day unpaid suspension he received in December 2014, (2) a temporary transfer to the Customer Service Department beginning in December 2014, and (3) DC Water's refusal to cover Poland's legal costs and fees related to Montgomery's lawsuit, but will GRANT DC Water's motion to dismiss all remaining claims of race discrimination.

Second, the court will DENY Defendant's motion to dismiss Poland's retaliation claim based on his allegation that on November 26, 2014, he engaged in a protected activity by reporting to Richards and Regis that he felt he was being discriminated against on the basis of his race due to the twenty-day suspension he had received, and that twelve days later, DC Water employees retaliated against him by transferring him to the Customer Service Department, but will GRANT DC Water's motion to dismiss any other claims of retaliation.

Third, the court will DENY DC Water's motion to dismiss Poland's hostile work environment claim.

And fourth, the court will GRANT DC Water's motion to dismiss Poland's Section 1983 claim.

Date:  July 6, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge